IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| FATEH ARSLAN,<br>*Plaintiff*<br><br>-vs-<br><br>UNITED STATES DEPARTMENT OF STATE, MARCO RUBIO, UNITED STATES SECRETARY OF STATE; U.S. EMBASSY IN AMMAN, JORDAN, PETER SHEA, AMBASSADOR OF THE U.S. AT THE U.S. EMBASSY IN AMMAN, JORDAN;<br>*Defendants* | SA-25-CV-00062-XR |

## ORDER ON MOTION TO DISMISS

On this date, the Court considered Defendants' motion to dismiss (ECF No. 7), Plaintiff's responses in opposition (ECF No. 9), and Defendants' reply (ECF No. 12). After careful consideration, the Court issues the following order.

## BACKGROUND

Plaintiff Fateh Arslan ("Plaintiff"), a United States citizen, seeks mandamus relief concerning a petition for an immigrant visa he filed in July 2019 on behalf of his father, M. Raid Arslan ("Mr. Arslan"), a Syrian citizen residing in Aleppo, Syria. ECF No. 1 ¶¶ 10–13. In March 2020, the United States Citizenship and Immigration Services ("USCIS") approved the petition and forwarded it to the U.S. Department of State's National Visa Center ("NVC"). *Id.* ¶¶ 15–16. The case file was transferred to the U.S. Embassy in Amman, Jordan for further action in August 2023. *Id.* ¶ 16.

On October 30, 2023, Mr. Arslan attended a consular interview at the U.S. Embassy in Amman and applied for an immigrant visa. ECF No. 1. On the same day, a consular officer determined that he was ineligible for the visa and refused the application under Section 221(g) of

the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1201(g). ECF No. 7-1 . The refusal notice explained that if the case was refused for administrative processing, it would remain in refused status while such processing was ongoing, and the applicant would receive another adjudication upon completion of that processing. ECF No. 7-2.

Following the interview, the consular officer requested additional information from Mr. Arslan, which he promptly submitted. ECF No. 1 ¶ 17. In November 2024, Defendants requested further documentation, which Mr. Arslan provided the next day. *Id.* ¶ 18. Despite these submissions, the application remained in administrative processing, and Plaintiff never received another adjudication. *Id.* ¶ 19. Plaintiff made repeated attempts to obtain a decision from Defendants by contacting the Consulate multiple times, but these efforts have been unsuccessful. *Id.* ¶ 20.

In January 2025, Plaintiff initiated this action against the U.S. Department of State, the U.S. Secretary of State, the U.S. Embassy in Amman, Jordan, and the U.S. Ambassador to Jordan ("Defendants"),[1] alleging that the delay in processing is unreasonable, in violation of Defendants' legal obligations under the Administrative Procedure Act ("APA"), 5 U.S.C. § 555(b). ECF No. 1. Plaintiff also asserts that Defendants' alleged failure to provide a reasonable and just framework of adjudication violates a right to fundamental fairness in administrative adjudication that is protected by the Due Process Clause of the Fifth Amendment. *Id.*

Plaintiff seeks a writ of mandamus to compel Defendants to complete administrative processing within sixty days, adjudicate the visa application, issue the immigrant visa, and explain the cause and nature of the delay. *Id.* at 7. Plaintiff also asks the Court to adjudicate his father's immigrant visa under its declaratory judgment authority and award attorney's fees. *Id.*

---

[1] Since the filing of Plaintiff's original petition, all Defendants sued in their official capacities have been substituted by their successors in office pursuant to Federal Rule of Civil Procedure 25(d).

Defendants move to dismiss Plaintiff's complaint for lack of subject matter jurisdiction under Rule 12(b)(1), arguing that the action is moot because the case was adjudicated when the consular officer refused the visa application in October 2023, ECF No. 7 at 8–12, and that the action is otherwise nonjusticiable under the doctrine of consular non-reviewability, *id.* at 12–15. Finally, Defendants assert that Plaintiff has failed to state a claim for a due process violation.

## DISCUSSION

### I.  Legal Standard

#### A.  Rule 12(b)(1) – Lack of Subject Matter Jurisdiction

Dismissal is proper under Rule 12(b)(1) "when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). Federal courts may adjudicate only "actual, ongoing controversies between litigants." *Deakins v. Monaghan*, 484 U.S. 193, 199 (1988). "If a dispute has been resolved or if it has evanesced because of changed circumstances . . . it is considered moot." *Am. Med. Ass'n v. Bowen*, 857 F.2d 267, 270 (5th Cir. 1988).

In ruling on a motion under Rule 12(b)(1), the Court may consider: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Freeman v. United States*, 556 F.3d 326, 334 (5th Cir. 2009). "Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Williamson v. Tucker*, 645 F.2d 404, 412–13 (5th Cir. 1981). Materials such as affidavits and regulations can be considered when relevant to the issue of jurisdiction. *Poindexter v. United States*, 777 F.2d 231 (5th Cir. 1985).

### B. Rule 12(b)(6) – Failure to State a Claim

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for the dismissal of a complaint for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A claim for relief must contain: (1) "a short and plain statement of the grounds for the court's jurisdiction"; (2) "a short and plain statement of the claim showing that the pleader is entitled to relief"; and (3) "a demand for the relief sought." FED. R. CIV. P. 8(a). A plaintiff "must provide enough factual allegations to draw the reasonable inference that the elements exist." *Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.*, 995 F. Supp. 2d 587, 602 (N.D. Tex. Feb. 3, 2014) (citing *Patrick v. Wal–Mart, Inc.-Store No. 155,* 681 F.3d 614, 617 (5th Cir. 2012)).

In considering a motion to dismiss under Rule 12(b)(6), all factual allegations from the complaint should be taken as true, and the facts are to be construed in the light most favorable to the nonmoving party. *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993). Still, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "'[N]aked assertions' devoid of 'further factual enhancement,'" and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the presumption of truth. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

**II.     Analysis**

Generally, an alien may not be admitted into the United States without being issued a visa. *See* 8 U.S.C. § 1182(a)(7). "The INA creates a special visa-application process for aliens sponsored by 'immediate relatives' in the United States." *Kerry v. Din*, 576 U.S. 86, 89 (2015) (quoting 8 U.S.C. §§ 1151(b), 1153(a)). "[T]he citizen-relative first files a petition on behalf of the alien living abroad, asking to have the alien classified as an immediate relative." *Id.* When a petition is approved by the Department of Homeland Security ("DHS"), through United States Citizenship and Immigration Services ("USCIS"), the alien may apply for a visa by submitting the required documents and appearing at a United States Embassy or consulate for an interview with a consular officer. *Id.*

When a visa application has been properly completed and executed before a consular officer, "the consular officer *must* issue the visa, refuse the visa under INA 212(a) or 221(g) or other applicable law or . . . discontinue granting the visa." *See* 22 C.F.R. § 42.81(a). Consular officers "shall refuse" a visa under INA 221(g) for reasons enumerated in 22 C.F.R § 40.201(a).[2] Section 40.201(b) further provides that such a refusal "*does not bar* reconsideration of the application upon compliance by the applicant with the requirements of INA and the implementing

---

[2] 22 C.F.R § 40.201(a) requires refusal of a visa application if:

1. The applicant fails to furnish information as required by law or regulations;
2. The application contains a false or incorrect statement other than one which would constitute a ground of ineligibility under INA 212(a)(6)(C);
3. The application is not supported by the documents required by law or regulations;
4. The applicant refuses to be fingerprinted as required by regulations;
5. The necessary fee is not paid for the issuance of the visa or, in the case of an immigrant visa, for the application therefor;
6. In the case of an immigrant visa application, the alien fails to swear to, or affirm, the application before the consular officer; or
7. The application otherwise fails to meet specific requirements of law or regulations for reasons for which the alien is responsible.

5

regulations or consideration of a subsequent application submitted by the same applicant." *Id.* § 40.201(b) (emphasis added).

Indeed, the regulations *require* reconsideration of a visa refusal if, within one year of the refusal, the applicant "adduces further evidence tending to overcome the ground of ineligibility on which the refusal was based. *See id.* § 42.81(e) ("[T]he case *shall* be reconsidered.") (emphasis added); *Pedrozo v. Clinton*, 610 F. Supp. 2d 730, 737 (S.D. Tex. 2009) (concluding that the use of the word "shall" under 8 U.S.C. § 1184(c)(1) imposed a non-discretionary statutory duty upon USCIS to process non-immigrant status petitions and considering whether USCIS had unreasonably delayed rendering a final decision on a non-immigrant petition).

The State Department's Foreign Affairs Manual ("FAM") directs consular officers to "find that an applicant has 'overcome' an [immigrant visa ('IV') refusal] under INA 221(g) in two instances: (1) when the applicant has presented additional evidence, allowing you to re-open and re-adjudicate the case, or (2) when the case required additional administrative processing, which has been completed. An IV applicant missing a birth certificate, for instance, should be refused INA 221(g) pending that certificate[.] When the applicant returns with the document, you should overcome the previous refusal, allowing the case to be adjudicated." 9 FAM 306.2-2(A)(a).[3]

In short, the consular office *must* reconsider visa refusals on certain grounds when an applicant submits additional evidence within one year of the refusal. *Id.* § 42.81(e). The regulations do not, however, contain an explicit deadline for completing such reconsiderations . *See generally id.* § 42.81.

---

[3] "It is helpful to refer to the Foreign Affairs Manual, which is used by USCIS and Consular Officers alike in processing petitions and visa applications." *Pedrozo v. Clinton*, 610 F. Supp. 2d 730, 732 (S.D. Tex. 2009).

6

A. **Plaintiff's APA Claim**

Under the APA, courts are authorized to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). The APA requires that every agency conclude a matter within a reasonable time. 5 U.S.C § 555(b). An APA claim pursuant to 5 U.S.C. § 706(1) exists when a "plaintiff asserts that an agency failed to take a *discrete* agency action that it is r*equired to take*." *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004) (emphasis in original). To the extent that "agency action is committed to agency discretion by law," the APA does not apply. 5 U.S.C. § 701(a)(2).

To state a claim under the APA, a plaintiff "must show (1) that an agency has a nondiscretionary duty to perform some action under law, and (2) that the agency has failed to perform said action." *See Chuttani v. U.S. Citizenship & Immigration Servs.*, No. 3:19-cv-02955-X, 2020 WL 7225995, at *2 (N.D. Tex. Dec. 8, 2020). Even then, the APA empowers a court only to compel an agency to perform a ministerial or non-discretionary act or to take action upon a matter, without directing how it shall act. 5 U.S.C. § 706(1); *Ali v. United States Dep't of State*, No. 5:23-CV-32-D, 2023 WL 3910249 (E.D.N.C. June 8, 2023).

Accordingly, the Court has no authority under the APA to grant much of the substantive relief requested in Plaintiff's complaint, including his request that the Court adjudicate his father's immigrant visa under its declaratory judgment authority or compel Defendants to issue the immigrant visa. The Court thus turns to Plaintiff's remaining requests for relief—that Defendants adjudicate the visa application based on the new information Mr. Arlsan has supplied—and Defendants' arguments that Plaintiff's APA claims are both moot and non-justiciable.[4]

---

[4] In their reply brief, Defendants further assert that the Court lacks jurisdiction to review Plaintiff's claim of delay because there is no clear mandate requiring consular officers to conclude administrative processing withing a certain time period and, relatedly that Plaintiff cannot establish an unreasonable delay. ECF No. 12 at 4–5, 8–9. Even if Defendants had given Plaintiff an opportunity to brief these arguments, they appear to confuse merits questions for

1.  **Mootness**

Defendants contend that Plaintiff's APA claim is moot because, contrary to Plaintiff's assertion, the visa application has already been adjudicated, and Plaintiff is merely seeking reconsideration of the consular officer's discretionary decision. ECF No. 7 at 8–12.

In short, the parties disagree about whether the refusal of the visa application was a final agency action. Of course, the refusal letter explicitly stated that the visa application was refused and that any further processing would not change the status of the application, absent another adjudication. ECF No. 7-2 ("If you were informed by the consular officer that your case was refused for administrative processing, your case will remain refused while undergoing such processing."). But, as previously discussed, consular officers *must* reconsider denials under 221(g) where, as here, an applicant submits additional evidence that can overcome the ground for ineligibility. *Cf. Sackett v. Env't Prot. Agency*, 566 U.S. 120, 127 (2012) ("The *mere possibility* that an agency might reconsider . . . does not suffice to make an otherwise final agency action nonfinal.") (emphasis added).

The Fifth Circuit has not adopted a uniform approach to the issue of final agency action in visa cases. Several courts in the Western District of Texas have held that the refusal of a visa application renders claims seeking adjudication of the application moot, even if the consular

---

jurisdictional issues. *See Ahmed v. DHS*, 328 F.3d 383, 386–87 (7th Cir. 2003) (distinguishing between the court's power to adjudicate the case, which is jurisdictional, and the court's power to grant relief, which is not jurisdictional).

Moreover, while "neither the immigration statutes nor the regulations prescribe any sort of deadline by which USCIS must exercise its mandatory duty to render a decision[,] . . . . Section 555(b) of the APA provides, and many courts have held, that in the absence of any direct authority providing otherwise, an agency, including the USCIS, must conclude a matter presented to it 'within a reasonable time'". *Elmalky v. Upchurch*, No. 3:06-CV-2359-B, 2007 WL 944330, at *3 (N.D. Tex. Mar. 28, 2007) (collecting cases). "What constitutes an unreasonable delay in the context of immigration applications depends to a great extent on the facts of the particular case." *Id.* at *6.

In sum, the Court has jurisdiction to consider whether the delay in adjudication is unreasonable but, given the dearth of briefing on the question, declines to address the merits at this juncture. *See Gillaspy v. Dallas Indep. Sch. Dist.*, 278 F. App'x 307, 315 (5th Cir. 2008) ("It is the practice of this court and the district courts to refuse to consider arguments raised for the first time in reply briefs.").

officer has requested or identified additional documents that could be submitted on reconsideration. *See Bamdad v. Dep't of State*, No. 1-23-CV-757-DAE, 2024 WL 1462948 (W.D. Tex. Feb. 9, 2024) (collecting cases); *see also Jolghazi v. Blinken*, No. 5:23-CV-01071-OLG, 2024 WL 4182593 (W.D. Tex. July 30, 2024); *Roshan v. Dep't of State*, No. 1-23-CV-1297-RP, 2024 WL 3843786 (W.D. Tex. July 22, 2024). This Court is not bound by any of these decisions and declines to follow them on these facts.

Nor is the Court entirely persuaded that an agency's refusal of a visa application can *never* constitute a "final decision" when it is simultaneously held in administrative processing. *See* ECF No. 9 at 8–9. These cases take the position that "[a]dministrative processing is part of the initial visa application process – not a reconsideration of a denial. In other words, administrative processing is another inning in the visa application ballgame. It might be extra innings, but it's still the same game. And the game is not yet over." *Zadeh v. Blinken,* No 1:23-cv-03721, 2024 WL 2708324, at * (N.D. Ill. May 20, 2024).[5] This theory might have legs if *all* visa applications were initially refused for administrative processing, such that all applications were in fact adjudicated through post-refusal administrative processing. *See Chuttani*, 2020 WL 7225995, at *2. But some visa applications are granted following the interview, and some are refused.[6]

---

[5] *See also Awal v. U.S. Dep't of State*, No. 24-cv-382 (KMM/ECW), 2024 WL 4979661, *9 (D. Minn. Dec. 4, 2024) ("[W]hen an application is in administrative processing, there has been no final decision, and the agency still has an obligation to adjudicate the application in a timely manner."); *Alam v. Blinken*, 2024 WL 4804557, at *5 (E.D. Cal. Nov. 15, 2024) ("A refusal for administrative processing that indicates another adjudication is forthcoming pending additional document submission and review hardly appears to be a final decision."); *Tamjidi v. Blinken*, No. 2:23-cv-03967-RGK-MRW, 2024 WL 4328813, at *3 (C.D. Cal. Aug. 27, 2024) ("[T]he government cannot sidestep its duties by simply labeling an ongoing case a refusal.") (collecting cases); *Rafieikhajegini v. U.S. Dep't of State*, No. CV-23-01972-PHX-DWL, 2024 WL 2300504 (D.A.Z. May 21, 2024) (request for additional information suggests the consular official did not reach a final decision to deny the plaintiff's visa application, but instead kept it "under consideration pending receipt"); *Sharifi v. Blinken*, No. 23-cv-5112, 2024 WL 1798185, at *3–5 (E.D.N.Y. Apr. 25, 2024) ("a decision under Section 221(g) was 'not a final agency action'"); *Shahijani v. Laitinen*, No. 2:23-cv-03967-RGK-MRW, 2023 WL 6889774, at *3 (C.D. Cal. Oct. 6, 2023) ("Courts in this district have repeatedly held that a refusal for 'administrative processing' is not a final decision.") (collecting cases).

[6] *See Administrative Processing Information*, U.S. Dep't of State – Bureau of Consular Affairs, https://perma.cc/J25S-MQ97 (last visited Oct. 14, 2025).

In any event, concluding that *all* administrative processing renders officers' decisions non-final would subject the Department of State to endless APA claims from understandably anxious applicants, with the perverse effect of making officers reluctant to send a case to administrative processing. As the Court of Appeals of the District of Columbia recently explained, a consular officer who refuses to issue a visa "may . . . conclude that the applicant could perhaps still receive a visa eventually if circumstances change" and "choose to place an officially refused application in administrative processing":

> If the consular officer gets enough new information, sometimes from sources other than the applicant, the officer can determine *sua sponte* that the administrative processing is "completed" and may then re-open and re-adjudicate the applicant's case. *Id.* § 306.2-2(A)(a)(2). Unless and until that happens, though, the visa application remains officially refused. *Because the visa application has already been officially refused, keeping the door open in administrative processing can only benefit, never hurt, the applicant's entry prospects*.

*Karimova v. Abate*, No. 23-5178, 2024 WL 3517852, at *2 (D.C. Cir. July 24, 2024). In other words, at its outer limits, Plaintiff's position is self-defeating.

In this Court's view, there is a reasonable middle ground: the finality of a case in administrative processing depends on whether the consular officer has *received* documents during administrative processing that *require* the officer to reconsider the refusal. 9 FAM 306.2-2(A)(a). An officer who places an application in administrative processing will presumably have no reason to reconsider the application *until* she receives the documents that "overcome" the refusal under INA § 221(g), making reconsideration a "mere possibility." *Sackett*, 566 U.S. at 127. When the officer receives documents or information that "overcome" the refusal, reconsideration is mandatory. 9 FAM 306.2-2(A)(a).

Here, the complaint plausibly alleges that Mr. Arslan has submitted documents that require reconsideration of his visa application. *See* ECF No. 17–19. Moreover, given the timing of the

10

submissions, the Court presumes that they overcame Mr. Arslan's refusal because nothing in the parties' pleadings or briefing suggests that the documents have not been returned to him approximately two years after the refusal of his visa. Federal regulations provide that "[i]f the ground of ineligibility may be overcome by the presentation of additional evidence and the applicant indicates an intention to submit such evidence, all documents may, with the consent of the alien, be retained in the consular files for a period not to exceed one year. If the refusal as *not* been overcome *within one year*, any documents not relating to the refusal *shall* be removed from the file and returned to the alien." 22 CFR § 42.81(b); *see also Al-Gharawy v. U.S. Dep't of Homeland Sec.*, 617 F. Supp. 3d 1, 13 (D.D.C. 2022) (reasoning that Consular officers do not have "discretion [to] indefinitely . . . delay a decision on a visa application").

Thus, as a practical matter, this case is not moot because it is possible for the Court to afford some relief to Plaintiff by requiring final adjudication of the visa application, even if it is ultimately refused—that is the nature of much relief under the APA.[7] *See Chafin v. Chafin*, 568 U.S. 165, 166 (2012) (a case "becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party" and as "long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot").

### 2. Justiciability

Defendants assert that if this case were not moot, consular nonreviewability renders this action non-justiciable. ECF No. 7 at 12–15.

While the APA normally allows a court to review an agency's decisions, "it does not if the decision is 'committed to agency discretion by law'—and the decision to deny a visa is committed to a consular officer's discretion." *Jaime v. Blinken*, No. EP-22-CV-248-KC, 2023 WL 2657651,

---

[7] This would not be true for *all* cases held in administrative processing, however. Without a showing that an agency has an outstanding duty to act, there is no basis for challenging the timeliness of its action under the APA.

11

at *1 (W.D. Tex. Mar. 24, 2023) (quoting *Perales v. Casillas*, 903 F.2d 1043, 1047 (5th Cir. 1990)). "Some courts have found that the APA does permit review of claims that the government has unreasonably *delayed* . . . its processing of a visa petition." *Id.* (emphasis added); *Jaraba v. Blinken*, 568 F. Supp. 3d 720, 728–31 (W.D. Tex. 2021) ("Most courts have held that this limitation on judicial review only applies to a consul's decision to either grant or deny a visa application.") (collecting cases); *Ali v. Rice*, No. H-07-1868, 2008 WL 11502058, at *8 (S.D. Tex. July 31, 2008) ("There is no language within the INA itself that prohibits judicial review prior to a final adjudication of a visa claim.").

Defendants insist that the decision left to the consular officer's discretion has already been made, and thus any delay in the processing of Mr. Arslan's application is no longer cognizable. But Plaintiff concedes that "[t]he Court is unable to compel an agency to reach a specific decision on Plaintiff's relative visa application" and "may [only] order the agency to take action or simply act." *See* ECF No. 9 at 8 (quoting *Giddings v Chandler,* 979 F.2d 1004, 1008 (5th Cir. 1992)). "Plaintiff is not asking the Court to order the Defendants to *approve* his relative visa case, but the law does provide that his family is entitled to a final decision." *Id.* at 9.

Combined with his plausible allegation that the refusal was not a final decision, the doctrine of consular non-reviewability is inapplicable to his claim that the decision has been unreasonably delayed. *See Jaraba*, 568 F. Supp. 3d at 728–31; *Ali*, 2008 WL 11502058, at *6; *Raouf v. U.S. Dep't of State*, 702 F. Supp. 3d 19, *6 (D.N.H. 2023); *Al-Gharawy*, 617 F. Supp. 3d at 11 (identifying a "long line of decisions" holding that consular nonreviewability "does not bar judicial review of a consular officer's delay when a visa application has been provisionally refused pending a final decision" because the INA does not give immigration officials "discretion [to] indefinitely ... delay a decision on a visa application").

Moreover, "[t]he doctrine of consular nonreviewability is a judicial creation; the Court will not, in the absence of clear precedent, extend it to the process of visa issuance when Congress has indicated in sections 702 and 706(1) of the APA that courts should have jurisdiction to review claims of unreasonable delay." *Jaraba*, 568 F. Supp. 3d at 731.[8]

### B. Mandamus Act

The Mandamus Act states that federal district courts have jurisdiction to compel officers, employees, or agencies of the United States to perform a duty owed to a plaintiff. *Kashkool v. Chertoff*, 553 F. Supp. 2d 1131, 1135 (D. Ariz. 2008) (citing 28 U.S.C. § 1361). Here again, the Court cannot compel an agency to reach a specific decision on a visa application; it may order the agency to take action or simply act. *Giddings v Chandler*, 979 F.2d 1004, 1008 (5th Cir. 1992). Thus, a petitioner "who seeks relief for immigration delays under the Mandamus Act and the APA must make essentially the same showing for both claims." *Sawan v. Chertoff*, 589 F. Supp. 2d 817, 829 (S.D. Tex. 2008).

Defendants assert that a petitioner can seek relief under the Mandamus Act only when there is no other remedy available to her. *Id.*; *see also Cheney v. United States Dist. Court for D.C.*, 542 U.S. 367, 380 (2004); *United States v. Denson*, 603 F.2d 1143, 1148 n.2 (5th Cir. 1979). Because "[t]he APA provides a remedy for unlawfully delayed agency action[,] mandamus is not necessary for relief." *Sawan*, 589 F. Supp. 2d at 826.

But a court has jurisdiction over mandamus actions where, as here, "mandamus would be an appropriate means of relief." *Jones v. Alexander*, 609 F.2d 778, 781 (5th Cir. 1980). And the

---

[8] Whether the doctrine of consular nonreviewability invokes a jurisdictional or merits issue is an open question. *Compare Raouf v. U.S. Dep't of State*, 702 F. Supp. 3d 19, 25 (D.N.H. 2023) ("There is, however, a growing consensus among the Courts of Appeals that, despite statements in the caselaw suggesting that the doctrine is jurisdictional in nature, consular nonreviewability is in reality a merits issue") *with Bamdad*, 2024 WL 1462948 at *3 (finding that consular nonreviewability would apply if the case were not moot) *and Jolghazi*, 2024 WL 4182593 at *3.

Federal Rules of Civil Procedure provide that a plaintiff may plead in the alternative or invoke various legal avenues of relief. FED. R. CIV. P. 8(d)(2). Thus, Plaintiff may assert claims, however duplicative, under both the Mandamus Act and the APA. *Cf. Ahmadi v. Chertoff*, 522 F. Supp. 2d 816, 818 n.3 (N.D. Tex. 2007) ("Given the APA's authorization of courts to compel agency action unreasonably delayed, the request for mandamus relief seems largely duplicative. . . . Because analysis of Ahmadi's request for relief under [the Mandamus Act] would be essentially redundant, the Court confines its analysis to their request for relief under the APA.").

    **C.**    **Due Process**

The Plaintiff further contends that "the combined delay and failure to act by Defendants has violated the due process rights of Plaintiff." ECF No. 1 at 34. The Supreme Court recently decided that "a citizen does not have a fundamental liberty interest in her noncitizen spouse being admitted to the country," noting that "a procedural due process right in *someone else*'s legal proceeding would have unsettling collateral consequences." *Dep't of State v. Munoz*, 144 S. Ct. 1812, 1814 (2024) (emphasis in original). The emotional and financial injuries Plaintiff alleges that he has suffered due to the delays in processing his father's visa application do not give him a constitutional right to participate in his father's consular proceeding. *See id*.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss (ECF No. 7) is **GRANTED IN PART** and **DENIED IN PART**. Plaintiff's due process claim is **DISMISSED** for failure state a claim and his claims for relief asking that the Court adjudicate his father's immigrant visa under its declaratory judgment authority or compel Defendants to issue the immigrant visa are **DISMISSED** for lack of subject matter jurisdiction. All other claims for relief under the APA and Mandamus Act remain pending.

The parties are **DIRECTED** to submit a proposed scheduling order in the form attached to the Court's order dated June 3, 2025 (ECF No. 10), **by no later than October 29, 2025** .

It is so **ORDERED**.

**SIGNED** this 15th day of October, 2025.

	XAVIER RODRIGUEZ
	UNITED STATES DISTRICT JUDGE